# EXHIBIT A

E-FILED | 3/27/2026 1:32 PM
CC-20-2026-C-389
Kanawha County Circuit Clerk
Cathy S. Gatson

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

**GARNET ANN DAVIS**,

Plaintiff,

v.

**SAGENT PHARMACEUTICALS, INC.**, and
**McKESSON MEDICAL-SURGICAL INC.**,

Defendants.

Civil Action No.:
Hon.:

# Complaint

Plaintiff Garnet Ann Davis, by and through her undersigned counsel, brings this action against Defendants Sagent Pharmaceuticals, Inc. and McKesson Medical-Surgical Inc., and alleges as follows:

## I. PARTIES

1. Plaintiff Garnet Ann Davis is a retired resident and citizen of Wallback, Clay County, West Virginia, residing at 81 Davis Lane, Wallback, WV 25285. She suffered chronic osteomyelitis of the right foot and the permanent amputation of her right great toe and first ray following an injection of a contaminated batch of Methylprednisolone Acetate Injectable Suspension, USP, which contained black particulate matter, and was manufactured by Defendant Sagent Pharmaceuticals, Inc. and distributed by Defendant McKesson Medical-Surgical Inc. — a product that was subsequently recalled due to contamination. This action is brought for the personal injuries and

damages Plaintiff suffered as a result of Defendants' wrongful acts and omissions.

2. Defendant Sagent Pharmaceuticals, Inc. ("Sagent") is a foreign corporation organized and existing under the laws of Wyoming, registered to do business in the State of West Virginia, with a principal office address of 1515 E. Woodfield Road, Suite 1100, Schaumburg, Illinois 60173. Sagent may be served through its registered agent, Corporation Service Company, 808 Greenbrier Street, Charleston, WV 25311. At all relevant times, Sagent was engaged in the business of manufacturing, designing, testing, supplying, labeling, marketing, promoting, selling and distributing pharmaceutical products, including Methylprednisolone Acetate Injectable Suspension, USP, for sale and use throughout the United States, including West Virginia.

3. Defendant McKesson Medical-Surgical, Inc. ("McKesson") is a foreign corporation organized under the laws of the Commonwealth of Virginia, registered to do business in the State of West Virginia, with a principal office address of 9954 Mayland Drive, Suite 4000, Richmond, VA 23233. McKesson may be served through its registered agent, Corporation Service Company, 808 Greenbrier Street, Charleston, WV 25311. At all relevant times, McKesson was engaged in the business of supplying, marketing, promoting, selling and distributing pharmaceutical and medical products throughout the United States, including West Virginia, and was the distributor of the

Methylprednisolone Acetate Injectable Suspension, USP manufactured by Sagent that was administered to Plaintiff.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to W. Va. Code § 51-2-2, as this is a civil action for damages exceeding the jurisdictional minimum.

5. This Court has personal jurisdiction over Defendants because they transact business within the State of West Virginia, maintain registered agents for service of process in West Virginia, and because the events giving rise to Plaintiff's claims occurred in Kanawha County, West Virginia.

6. Venue is proper in Kanawha County, West Virginia, pursuant to W. Va. Code § 56-1-1, because the injury-causing events occurred in Kanawha County, West Virginia, when the plaintiff received her injection at West Virginia Foot and Ankle PLLC, The Wound Institute, 1 Kenton Drive Suite 100, Charleston, WV, 25311.

## III. FACTUAL ALLEGATIONS

7. Plaintiff Garnet Ann Davis, born January 2, 1947, is a retired woman who, prior to the events described herein, lived independently.

8. Plaintiff had been receiving corticosteroid injections approximately every six months at West Virginia Foot & Ankle, PLLC, located at 1 Kenton Drive, Suite 100, Charleston, West Virginia, for the treatment of acquired right

hallux rigidus (severe arthritis of the right first metatarsophalangeal joint). She had been receiving these injections regularly for several years, had never experienced a serious adverse reaction, and reasonably relied on Defendants to manufacture, supply, and deliver a sterile, safe injectable product for her use.

9. On March 28, 2024, Plaintiff received an injection of Methylprednisolone Acetate Injectable Suspension, USP, 40 mg/mL, mixed with 1 mL of Lidocaine 1%, administered into her right first metatarsophalangeal joint at West Virginia Foot & Ankle, PLLC, in Charleston, West Virginia.

10. The Methylprednisolone Acetate Injectable Suspension, USP administered to Plaintiff on March 28, 2024 was manufactured by Defendant Sagent and distributed by Defendant McKesson.

11. Defendants knew that the Methylprednisolone Acetate Injectable Suspension, USP they manufactured and distributed would be injected directly into the joints and tissues of patients such as Plaintiff, and that failure to maintain the sterility and purity of the product would cause those patients to suffer severe bacterial infection, sepsis, and potentially catastrophic injury.

12. At no time did Plaintiff know, or have reason to believe, that the Methylprednisolone Acetate Injectable Suspension, USP administered to her was contaminated, subject to recall, or in any condition unsuitable for its intended use.

13. Immediately following the March 28, 2024 injection, Plaintiff experienced acute and severe pain, redness, and swelling at the injection site — symptoms that were unusual and materially different from her prior injection experiences.

14. On or about April 1, 2024, Plaintiff presented to the Emergency Department at CAMC Memorial Hospital in Charleston, West Virginia, with severe right foot pain, erythema, and swelling. An arthrocentesis was performed, revealing cloudy synovial fluid consistent with joint infection.

15. Plaintiff was admitted to CAMC Memorial Hospital from April 1 through April 8, 2024, with diagnoses of cellulitis of the right foot and MSSA (Methicillin-sensitive Staphylococcus aureus) bacteremia. She underwent surgical debridement of the right foot on April 4, 2024, and was discharged on a four-week course of intravenous Kefzol (cefazolin) via PICC line.

16. Plaintiff's condition did not resolve. She was re-admitted to CAMC Memorial Hospital from April 23 through May 2, 2024, for worsening MSSA bacteremia secondary to right foot osteomyelitis. During this hospitalization, she underwent bone biopsy, two incision and drainage procedures, and an osteotomy of the right great toe. Pathology confirmed acute and chronic osteomyelitis of the first proximal phalanx and MTP joint.

17. Despite multiple hospitalizations and aggressive antibiotic therapy over several months, Plaintiff's osteomyelitis was recalcitrant and could not be resolved.

18. On June 24, 2024, Plaintiff underwent amputation of her right first ray (right great toe) at CAMC Memorial Hospital due to persistent, treatment-resistant osteomyelitis directly caused by the contaminated injection.

19. On or about June 25, 2024 — nearly three months after the injection, and after Plaintiff had already suffered irreversible harm including the loss of her toe — Plaintiff received a letter from West Virginia Foot & Ankle, PLLC informing her of an "urgent drug recall" of specific lots of Methylprednisolone Acetate Injectable Suspension, USP manufactured by Sagent and distributed by McKesson, advising that she "may have been given one of the affected injections" during a prior visit.

20. It was on June 25, 2024 that plaintiff learned that her injuries, damages, and losses were caused by the defendants.

21. Defendants were capable of identifying the recalled product by product code, lot number, expiration date, NDC number, and the identity of the patients who received the product. Stated simply, Defendants possessed the means to identify the unsafe product they distributed and who received it, yet failed to notify Plaintiff and her healthcare providers in a timely manner — before Plaintiff was given the product by her primary care physician, suffered catastrophic infection, and lost her toe and first ray.

22. The recalled Methylprednisolone Acetate Injectable Suspension, USP was defective in that it contained contamination rendering it unsafe and unfit for

human injection, as evidenced by Sagent's own subsequent recall of the product.

23. The product, as manufactured by Sagent and distributed by McKesson, reached Plaintiff without substantial change in its condition from the time it entered the stream of commerce.

24. As a direct and proximate result of receiving the defective, contaminated injectable product, Plaintiff developed severe MSSA bacteremia, septic arthritis, and osteomyelitis of the right foot, ultimately requiring the permanent amputation of her right great toe and first ray.

25. Following the amputation, Plaintiff developed permanent and debilitating conditions causally related to the defective product and resulting surgery, including Complex Regional Pain Syndrome (CRPS/Causalgia) of the right lower extremity, Phantom Limb Syndrome with pain, and Chronic Pain Syndrome.

26. Due to the severity and intractability of her chronic pain, and diagnosis of complex regional pain syndrome (CRPS), Plaintiff was required to undergo trial and permanent implantation of a spinal cord stimulator (Abbott Proclaim system) on July 31, 2025 and September 15, 2025 at St. Francis One Day Surgery in Charleston, West Virginia.

27. Plaintiff continues to suffer severe, unremitting pain rated at 10/10, balance deficits and recurrent falls causally related to her amputation, profound limitations in her activities of daily living, and permanent disability. An

Oswestry Disability Index administered on January 20, 2026 classified Plaintiff with 54% "Severe Disability."

28. Plaintiff's total medical charges to date exceed $156,957.56, with ongoing and future medical needs including continued pain management, spinal cord stimulator maintenance, and rehabilitative care.

## IV. CAUSES OF ACTION

### COUNT I: STRICT LIABILITY – MANUFACTURING DEFECT

*(Against Both Defendants)*

28. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

29. Defendants, acting within the stream of commerce as manufacturer and distributor respectively, placed the Methylprednisolone Acetate Injectable Suspension, USP into the hands of Plaintiff's healthcare providers in a defective condition that was unreasonably dangerous to consumers such as Plaintiff.

30. The product was defective in its manufacture in that it deviated from its intended specifications, contained contamination including particulate matter, and was otherwise adulterated or impure, as evidenced by Sagent's own subsequent recall of the product.

31. Plaintiff used the product in the manner intended — as an injectable corticosteroid — and the product's defective condition was the direct and proximate cause of her injuries, including MSSA bacteremia, osteomyelitis,

right great toe amputation, CRPS, phantom limb syndrome, and permanent disability.

32. Defendants are strictly liable to Plaintiff for all damages proximately caused by this manufacturing defect.

**COUNT II: STRICT LIABILITY – FAILURE TO WARN**
*(Against Both Defendants)*

33. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

34. Defendants knew, or reasonably should have known, that the Methylprednisolone Acetate Injectable Suspension, USP they manufactured and distributed was contaminated, nonsterile, and unsafe for injection, and that failure to warn of these defects could cause patients such as Plaintiff to suffer serious infection, sepsis, osteomyelitis, and permanent injury.

35. Defendants misrepresented and failed to adequately and timely warn Plaintiff, her healthcare providers, and the public that the product was defective, contaminated, and not sterile. Defendants' failure to timely provide this warning allowed the product to be administered to Plaintiff before any recall notice was received.

36. Defendants' failure to timely warn of the defective and unsafe nature of the product constitutes a failure-to-warn defect for which Defendants are strictly liable.

37. As a direct and proximate result of Defendants' failure to warn, Plaintiff suffered the injuries and damages described herein.

## COUNT III: NEGLIGENCE

*(Against Both Defendants)*

38. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

39. Defendants owed a duty to Plaintiff and to all foreseeable end-users of injectable pharmaceutical products to exercise reasonable care in the design, manufacture, testing, inspection, labeling, packaging, distribution, and recall notification processes to ensure their products were safe, sterile, and free of contamination.

40. Defendants knew or should have known of the defect or potential defect in the Methylprednisolone Acetate Injectable Suspension, USP, but negligently failed to properly manufacture, inspect, or timely warn of and/or concealed the potential risks associated with its use.

41. Defendants breached these duties in one or more of the following respects, among others:

    a. Manufacturing and distributing Methylprednisolone Acetate Injectable Suspension, USP in lots that were contaminated, adulterated, or otherwise defective and unsafe for human injection;

    b. Failing to maintain adequate quality control, quality assurance, and testing processes sufficient to detect contamination before releasing the product to market;

    c. Failing to adequately test each lot of the product before distribution to ensure sterility and freedom from contamination;

    d. Failing to timely initiate a recall of the contaminated lots upon discovering the defect, and/or concealed the contamination, resulting in

continued administration of the defective product to patients including Plaintiff; and

e. Failing to timely and adequately warn prescribers, distributors, and patients of the risk posed by the recalled product, despite possessing the ability to identify which patients received the unsafe product.

42. Defendants' negligence was a direct and proximate cause of Plaintiff's injuries and all resulting damages.

**COUNT IV: NEGLIGENCE PER SE**
*(Against Both Defendants)*

43. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

44. Federal law, including the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq., and applicable FDA regulations promulgated thereunder, including current Good Manufacturing Practice (cGMP) regulations, impose specific standards on pharmaceutical manufacturers and distributors governing the safety, sterility, labeling, and recall of injectable drug products.

45. The defective Methylprednisolone Acetate Injectable Suspension, USP manufactured by Sagent and distributed by McKesson violated these applicable federal and state standards, which are designed to protect persons such as Plaintiff.

46. Plaintiff is within the class of persons these statutes and regulations are designed to protect, and her injuries are of the type these statutes and regulations are designed to prevent.

47. Defendants' violations of these standards constitute negligence per se, and such negligence was a direct and proximate cause of Plaintiff's injuries and damages.

## COUNT V: BREACH OF EXPRESS AND IMPLIED WARRANTIES

*(Against Both Defendants)*

48. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

49. Defendants expressly and impliedly warranted that the Methylprednisolone Acetate Injectable Suspension, USP was sterile, safe, and reasonably fit and suitable for its intended purpose — intraarticular or intramuscular injection in patients.

50. Plaintiff and her healthcare providers reasonably relied upon these warranties in using the product as supplied and directed.

51. The product was not merchantable, not sterile, not safe, and not fit for its ordinary or intended purpose, as it was contaminated and subject to recall, and caused severe infection and catastrophic injury upon administration to Plaintiff.

52. By the use of reasonable care, Plaintiff could not have discovered the breached warranties or realized their danger.

53. Defendants' breach of express and implied warranties was a substantial factor and direct and proximate cause of Plaintiff's injuries and damages.

## V. DAMAGES

54. As a direct and proximate result of Defendants' conduct described above, Plaintiff Garnet Ann Davis has suffered, and continues to suffer, the following damages:

a. Severe physical pain and suffering, both past and future, including the pain of multiple hospitalizations, surgical debridements, bone biopsies, an osteotomy, amputation, and spinal cord stimulator implantation, as well as chronic intractable pain rated at 10/10, and complex regional pain syndrome (CRPS), among others, as injuries are permanent and treatment is ongoing;

b. Permanent physical deformities and disfigurement, including the amputation of her right great toe and first ray;

c. Permanency of injuries and permanent physical disability, including a 54% disability rating on the Oswestry Disability Index, the inability to ambulate without assistive devices, chronic balance deficits, recurrent falls, and inability to independently perform activities of daily living;

d. Severe and permanent mental anguish and emotional distress, anxiety, and depression causally exacerbated by these events;

e. Loss of enjoyment of life, including the permanent loss of independence, mobility, and the ability to engage in activities she previously enjoyed;

f. Loss of daily activities and loss of household production;

g. Annoyance and inconvenience, and the need for ongoing care and assistance;

h. Past and future medical expenses, including but not limited to hospitalization, surgery, home health, physical and occupational therapy, prescription medications, pain management, and spinal cord

stimulator maintenance, with total charges far exceeding $156,957.56 to date;

i. Such other and further damages as may be proven at trial.

## VI. <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff Garnet Ann Davis respectfully demands judgment against Defendants Sagent Pharmaceuticals, Inc. and McKesson Medical-Surgical Inc., jointly and severally, as follows:

1. Compensatory damages for all past and future physical pain, suffering, mental anguish, emotional distress, loss of enjoyment of life, loss of household production, loss of daily activities, permanency, disfigurement, and disability in an amount to be determined by a jury;
2. All past and future medical expenses and costs of care;
3. Punitive damages, in that Defendants' conduct in manufacturing and distributing a contaminated injectable drug product, and in failing to timely notify patients — including Plaintiff — of the recall despite possessing the means to do so, constitutes willful, wanton, and reckless conduct demonstrating conscious, grossly indifferent disregard for the safety and rights of others, entitling Plaintiff to an award of punitive damages pursuant to W. Va. Code § 55-7-29; among other facts supporting punitive damages;
4. Pre- and post-judgment interest as permitted by law;
5. Costs of this action, including reasonable attorneys' fees to the extent permitted by law; and

6. Such other and further relief as this Court may deem just and equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

LAIRD LAW
PLLC

Jordan M. Laird, Esq. (W.Va. Bar ID No. 12448)
Laird Law, PLLC
2 22nd Street, Suite 202
Wheeling, WV 26003
Phone: (304) 551-2800
Email: jordan@laird-law.com

*Counsel for the Plaintiff Garnet Davis*