UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | | |
|---|---|---|
| GARNET ANN DAVIS,<br><br>Plaintiff,<br><br>v.<br><br>SAGENT PHARMACEUTICALS, INC. and McKESSON MEDICAL-SURGICAL INC.,<br><br>Defendants. | ) | No. 2:26-cv-316<br><br>US District Judge Irene C. Berger |

**DEFENDANT SAGENT PHARMACEUTICALS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Sagent Pharmaceuticals, incorrectly identified as Sagent Pharmaceuticals, Inc. ("Sagent"), by and through its undersigned counsel, submits this memorandum in support of its Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

On March 27, 2026, Plaintiff Garnet Ann Davis filed a Complaint in the Circuit Court of Kanawha County, West Virginia, alleging she sustained injuries after being administered a dose of the prescription drug, Methylprednisolone Acetate Injectable Suspension (hereafter, "MASI," with the product at issue being the "Subject MASI"), allegedly manufactured by Sagent and distributed by Defendant McKesson Medical-Surgical Inc. (*See generally* ECF No. 1-1, Compl.) Plaintiff maintains the Subject MASI was defectively manufactured because it "may" have been subject to a recall by Sagent for the possible presence of black particulate matter. (*Id.* ¶ 19.) Sagent removed the case on May 6, 2026, based on diversity. (ECF No. 1, Not. of Removal.)

All five of Plaintiff's causes of action are directed at "Defendants," generally, and no allegation is directed at either Defendant individually, making it impossible for Sagent to craft a meaningful response to the Complaint. Even beyond this fundamental pleading deficiency, the claims asserted against Sagent are preempted by federal law, invalid under state law, or both. Because Plaintiff fails to state a claim upon which relief can be granted, Sagent moves to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Legal Standard

"A district court applies the federal pleading standard to all removed claims, including claims brought under state law." *Acey v. Bob Evans Farms, Inc.*, No. 2:13-cv-4916, 2014 WL 989201, at *2 (S.D. W. Va. Mar. 13, 2014) (citing Fed. R. Civ. P. 81(c)(1)). The Court may dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must plead enough facts, accepted as true, "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (cleaned up). To that end, Rule 8 articulates a pleading standard which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (cleaned up). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Without "enough facts to state a claim to relief," a complaint demands dismissal. *Id*. at 570.

## III. ARGUMENT

### A. Plaintiff's Complaint is an Impermissible Shotgun Pleading.

The Fourth Circuit has explained that where a complaint "fails to allege particular facts against a particular defendant, then the defendant must be dismissed." *SD3, LLC v. Black Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015); *see also Saunders v. Wilson*, No. 2:21-cv-261, 2024 WL 4472358, at *3 (S.D. W. Va. June 24, 2024), *report and recommendation adopted*, 2024 WL 4274698 (S.D. W. Va. Sept. 24, 2024).

Here, Plaintiff did exactly what the Fourth Circuit proscribes: filed a shotgun pleading that relies upon indeterminate assertions against "Defendants" without any specific facts regarding either one. Indeed, the only time Sagent is mentioned by name is when Plaintiff avers Sagent is the "manufacturer" of the Subject MASI who recalled several specified lots of multi-use vials after she was administered the drug. (*See* Compl. ¶¶ 1, 2, 10, 19, 23, 30, 45.) This is insufficient. As one district court explained in granting a motion to dismiss:

> Because Plaintiff has not alleged each Defendant's role in the manufacturing, marketing, or sales of the scope at issue, each defendant is denied notice of the duty to warn that it allegedly owes . . . . Plaintiff's lack of specificity with respect to the acts of each Defendant fails to provide proper notice of her claims to any one Defendant.

*Quashie v. Olympus America, Inc.*, 315 F. Supp. 3d 1329, 1341 (N.D. Ga. 2018).

Plaintiff's allegations "seek to sweep in everyone and everything, heedless of any actual indications of individual malfeasance that would justify the personal burdens that litigation can impose." *Evans v. Chalmers*, 703 F.3d 636, 662 (4th Cir. 2012) (Wilkinson, J, concurring). Thus, dismissal of these allegations is warranted under the dictates of *Twombly* and *Iqbal*.

**B. Plaintiff Fails to Plead a Manufacturing Defect Claim.**

Under West Virginia law, a manufacturer can be held strictly liable only if it places a defective, unreasonably dangerous product into the stream of commerce and that defect is the *proximate* cause of the plaintiff's injury. *Morningstar v. Black & Decker Mfg. Co.*, 253 S.E.2d 666, 682 (W. Va. 1979). Generally speaking, a product is defective if it is "not reasonably safe for its intended use." *Id.* at 683. There are three types of defect: "design defectiveness; structural defectiveness; and use defectiveness arising out of the lack of, or the adequacy of, warnings, instructions, and labels." *Ilosky v. Michelin Tire Corp*., 307 S.E.2d 603, 609 (W. Va. 1983). No matter the theory of defect at issue, a plaintiff must establish that "a product was defective when it left the manufacturer and the defective product was the proximate cause of the plaintiff's injuries." *Dunn v. Kanawha Cnty. Bd. of Educ.*, 459 S.E.2d 151, 157 (W. Va. 1995).

Defectiveness is also a *prima facie* element of negligence and warranty claims. *Williams v. Bob Barker Co., Inc*., No. 2:21-cv-436, 2022 WL 3575766, at *8 (S.D. W. Va. June 2, 2022) (negligence); *Smith ex rel. Smith v. Wyeth Lab'ys, Inc*., No. 84-cv-2002, 1986 WL 720792, at *4 (S.D. W. Va. Aug. 21, 1986) (warranty). The difference between a strict-liability and a negligence theory, as recognized in *Morningstar*, is that a strict liability theory simply relieves a plaintiff from the obligation to prove "that the manufacturer was negligent in some particular fashion during the manufacturing process and [permits] proof of the defective condition of the product as the principal basis of liability." *Morningstar*, 253 S.E.2d at 677.

**i. Plaintiff Has Not Plausibly Alleged a Product Defect.**

Here, Plaintiff's primary theory of liability is premised on manufacturing defect. More specifically, Plaintiff alleges that she was administered a MASI product that "may" have been subject to a recall or was otherwise "contaminated," "adulterated," or "impure." (*See* Compl.

Compl. ¶¶ 1, 12, 29.) These averments, however, are a far cry from a plausible claim predicated on well-pleaded facts that any manufacturing defect existed in the Subject MASI.

*First*, Plaintiff fails to allege facts sufficient to state the Subject MASI was, in fact, subject to the recall she relies on as "evidence" of its defectiveness. (Compl. ¶¶ 22, 30.) Even assuming the Subject MASI came from a recalled lot, the recalled lots only had a "*[p]otential* for black particulates"—not all multi-use vials subject to the recall were affected.[1] A recall premised on the *potential* of contamination is insufficient to establish a product defect as a matter of law. *In re Digitek Products Liab. Litig.*, 821 F. Supp. 2d 822, 835 (S.D. W. Va. 2011). Even assuming the Subject MASI came from a recalled lot, Plaintiff still does not allege facts showing the possible presence of particulate matter rendered the Subject MASI not reasonably safe for its intended use. Quite the contrary, FDA's designation of the recall as "Class II" reflects that the probability of serious adverse health consequences is remote.[2] That certain MASI products were recalled does nothing to establish the affected Subject MASI was defective.

*Second*, Plaintiff does not allege how black particulate matter, if present, rendered the Subject MASI "not reasonably safe for its intended use." *Morningstar*, 253 S.E.2d at 683. Plaintiff repeatedly asserts that the Subject MASI was contaminated, adulterated, impure, and therefore

---

[1] *See* FDA, *Enforcement Report*, publicly available at: https://www.accessdata.fda.gov/scripts/ires/?Product=207299 (last accessed June 12, 2026). "[T]he Court may take judicial notice of and consider the public records of the FDA. . . without transforming this motion into a motion for summary judgment." *Horne v. Novartis Pharm. Corp.*, 541 F. Supp. 2d 768, 777 (W.D.N.C. 2008) (taking judicial notice of labeling and FDA health advisory in deciding motion to dismiss); *Covert v. Stryker Corp.*, No. 1:08-cv-447, 2009 WL 2424559, at *1 (M.D.N.C. Aug. 5, 2009) (taking judicial notice of FDA premarket approval when deciding motion to dismiss); *U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (noting that courts "routinely take judicial notice of information contained on state and federal government websites.").

[2] *See* FDA, *Recalls Background and Definitions*, publicly available at: https://www.fda.gov/safety/industry-guidance-recalls/recalls-background-and-definitions (last accessed June 12, 2026).

unsafe. (*See* Compl. ¶¶ 1, 12, 22, 30, 34, 41, 51.) But bare allegations of contamination, adulteration, impurity, or recall do not alone establish that a product was defective under West Virginia law. And the mere existence of a recall potentially applicable to the Subject MASI does not bridge the gap in Plaintiff's pleading. The attempt to equate a recall with defectiveness "is a leap of epic size and simply untrue." *In re Digitek*, 821 F. Supp. 2d at 836.

Nor does Plaintiff's classification of Subject MASI as "adulterated" support a proposition that the Subject MASI was not reasonably safe for injection. "Adulterated" is a regulatory classification under the FDCA and does not itself establish that a product was defective under West Virginia products-liability law. *Id.* at 835 (reaffirming the FDA's explanation that "adulterated" under the law "does not mean that there is necessarily something wrong with the drug").

In sum, Plaintiff has failed to allege facts showing any alleged contamination, adulteration, or impurity rendered the Subject MASI defective and not reasonably safe for its intended use. Absent such allegations, Plaintiff has not plausibly pleaded the existence of a defect sufficient to impose liability upon Sagent.

ii. **The Complaint Fails to Demonstrate Proximate Cause.**

At the outset, there can be no proximate cause for a claim based on manufacturing defect where there is no well-pleaded fact establishing the product was defective in the first place. And, as discussed in more detail below, the very injuries Plaintiff complains of were cautioned against in the label for MASI in effect at the time of her injection. (*See*, *infra*, Section III.D.) Indeed, the risk of infection is present with any injectable drug regardless of any possible contamination, impurity, or adulteration. The Court, therefore, cannot infer the existence of a manufacturing defect in the Subject MASI when the injury is a warned-of risk associated with MASI use even in the absence of such imperfections. *Cf. Anderson v. Chrysler Corp.*, 403 S.E.2d 189, 194 (W. Va. 1991)

(observing that a malfunction inference requires that there be no "reasonable secondary cause" for the injuries alleged).

The Complaint therefore fails to allege sufficient facts linking any alleged particulate contamination to the infection Plaintiff ultimately developed. Pleading the occurrence of a recall with no accompanying causal link does not meet the fundamental requisite of pleading causation—especially in this case, where Plaintiff never affirmatively states the Subject MASI was affected by the recall to begin with. And Plaintiff's other conclusory allegations are similarly inadequate to plead causation. (*See* Compl. ¶ 21 ("[Plaintiff's] injuries, damages, and losses were caused by the defendants"); ¶ 31 ("the product's defective condition was the direct and proximate cause of her injuries"); ¶ 32 ("Defendants are strictly liable to Plaintiff for all damages proximately caused by this manufacturing defect."); ¶ 44 (Defendants' negligence was a direct and proximate cause of Plaintiff's injuries and all resulting damages.").) These unsupported allegations boil down to "an attempt to use speculation about a defect to prove causation and speculation about causation to prove a defect." *In re Digitek*, 821 F. Supp. 2d at 824. Such vague, speculative, and conclusory averments do not plausibly state a claim for relief.

There is no product liability case at all without a defective product. With no facts to support a conclusion that the Subject MASI was defective in its manufacture rendering it not reasonably safe for its intended use, the Court cannot reasonably infer wrongdoing on behalf of Sagent. Pursuant to the standards set forth in *Twombly* and *Iqbal*, Plaintiff's Complaint does not state a plausible manufacturing defect claim. As such, the Court should dismiss Counts I (Strict Liability – Manufacturing Defect), III (Negligence), IV (Negligence Per Se), and V (Breach of Express and Implied Warranties) in their entirety because they are all, at bottom, founded on the unsupported premise that Plaintiff's injuries were caused by a manufacturing defect in the Subject MASI.

**C. All Claims Based on Sagent's Alleged Failure to Warn Are Preempted by Federal Law.**

Plaintiff's claims concerning the adequacy of the warnings for the Subject MASI are categorically preempted under the U.S. Supreme Court's *Mensing* decision. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 609 (2011) (holding failure-to-warn claims involving generic drugs to be preempted). FDA's publicly available records show Sagent's MASI product was approved via abbreviated new drug application (ANDA) on June 27, 2018, as a generic equivalent to Pfizer's Depo-Medrol® brand-name drug.[3] Due to the preemptory effect of federal law, a product-liability action against a generic-drug manufacturer "simply cannot succeed." *Eckhardt v. Qualitest Pharm., Inc.*, 751 F.3d 674, 678 (5th Cir. 2014); *see also Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 476 (4th Cir. 2014) (affirming the dismissal of all claims involving a generic drug).

Sagent does not hold the New Drug Application (NDA) for the brand-name MASI product, Depo-Medrol. As such, federal regulations forbid Sagent from making any unilateral changes to the warnings for its generic MASI product. *Compare Wyeth v. Levine*, 555 U.S. 555, 573 (2009) (holding that failure-to-warn claims involving brand-name drugs are not necessarily preempted, because in certain circumstances, NDA holders may independently change their labeling via the changes-being-effected provision) *with Mensing*, 564 U.S. at 618 (holding that state-law failure-to-warn claims against generic manufacturers are preempted, because non-NDA holders are forbidden under federal law from making any unilateral changes to the labeling for generic drugs).

Because the MASI product alleged to be at issue is a generic drug, Plaintiff's claims "cannot escape *Mensing*'s grasp," "[n]o matter the garb in which she attempts to present them."

---

[3] *See* FDA's Approval Package for ANDA 201835, publicly available at: https://www.accessdata.fda.gov/drugsatfda_docs/nda/2018/201835Orig1s000.pdf (last visited June 8, 2026).

*Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1249 (11th Cir. 2013). Therefore, to the extent Plaintiff's claims are premised on Sagent's purported failure to warn, they are preempted by federal law. (*See* Compl. ¶¶ 21, 33-37, 39-40, 41(d)-(e), 44.)

**D. The Learned Intermediary Doctrine Precludes Plaintiff's Failure to Warn Claims.**

"[V]irtually every drug or device poses dangers under certain conditions." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 142 (2000). That is why medications like MASI can be accessed only through a valid prescription written by a licensed practitioner. And that is also why West Virginia has adopted the "learned intermediary doctrine," pursuant to which a prescription-drug manufacturer's duty to warn is breached only where the manufacturer or seller acts "unreasonably in failing to provide reasonable instructions or warnings regarding foreseeable risks of harm to prescribing or other health care providers who are in a position to reduce the risks of harm in accordance with the instructions or warnings," proximately causing the plaintiff's injury. W. VA. CODE § 55-7-30. The labeling for a drug represents "[t]he centerpiece of risk management" and the "FDA's principal tool for educating health care professionals about the risks and benefits of the approved product to help ensure safe and effective use." FDA, *Requirements on Content and Format of Labeling for Human Prescription Drug & Biological Products*, 71 Fed. Reg. 3,922, 3,934 (Jan. 24, 2006).

Plaintiff alleges Defendants failed to "adequately and timely warn" Plaintiff, her physician, and the public of the possibility the Subject MASI suffered a manufacturing defect due to its alleged contamination. (Compl. ¶ 35.) That does not plausibly state a claim.

Pursuant to the learned intermediary doctrine, Sagent had no duty to warn Plaintiff or "the public" regarding the alleged risks associated with MASI, regardless of her theory of liability. A

prescription drug manufacturer's duty to warn, however, runs solely to the prescribing physician, not to the ultimate consumer or the public. W. VA. CODE § 55-7-30.

To impose a duty upon Sagent to warn Plaintiff's prescriber of the possibility of contamination in the Subject MASI *prior* to the initiation of the April 25, 2024, recall would have effectively required Sagent to provide additional warnings beyond those included within the labeling for its brand-name counterpart, Depo-Medrol—an act it could not have done without violating federal law. *Mensing*, 564 U.S. at 618. "When a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for pre-emption purposes." *Id*. at 623–24. That is because "[t]he only action the [Defendant] could independently take—asking for the FDA's help—is not a matter of state-law concern." *Id*. at 624. Since Plaintiff's failure-to-warn claims are based on Sagent's failure to provide an additional warning or otherwise initiate its recall earlier than it did, and Sagent could not unilaterally do so without the FDA's involvement and approval, such failures cannot be a basis for Plaintiff's failure to warn claim. *See Exela Pharma Scis., LLC v. Sandoz, Inc.*, 486 F. Supp. 3d 1001, 1015 (W.D.N.C. 2020).

But Plaintiff's warnings-based claims also fail for a more fundamental reason: Rule 8. To satisfy federal pleading standards in the context of the learned intermediary doctrine, a complaint must contain sufficient facts to show, *inter alia*, that (i) the drug label was inadequate; (ii) the prescribing physician was unaware of the alleged risk; (iii) had a new or different warning been given, the plaintiff's harm would have been avoided; and (iv) the defendant acted unreasonably in failing to amend the label. *Ackermann v. Wyeth Pharms.*, 526 F.3d 203, 208 (5th Cir. 2008).

Plaintiff alleges she sustained injuries after developing a bacterial infection following injection with a contaminated MASI product. (Compl. ¶¶ 1, 14, 24.) The label for MASI in effect at the time of Plaintiff's injuries is replete with information regarding potential adverse events, including the possibility of severe infection.[4] Indeed, many of the adverse reactions complained of are expressly mentioned, including an increase in pain, swelling, erythema, and septic arthritis, with increasing doses of the medication amplifying the occurrence of infectious complications.

> **Infections**
> ***General***
> Persons who are on corticosteroids are more susceptible to infections than are healthy individuals. There may be decreased resistance and inability to localize infection when corticosteroids are used. Infections with any pathogen (viral, bacterial, fungal, protozoan, or helminthic) in any location of the body, may be associated with the use of corticosteroids alone or in combination with other immunosuppressive agents.
>
> These infections may be mild, but can be severe and at times fatal. With increasing doses of corticosteroids, the rate of occurrence of infectious complications increases. Do not use intra-articularly, intrabursally, or for intratendinous administration for local effect in the presence of an acute infection. Corticosteroids may mask some signs of infection and new infections may appear during their use.

Label, at 5.[5] The label further warns that multidose use of MASI from a single vial "may lead to contamination unless strict aseptic technique is observed." *Id.* at 4.

Plaintiff's Complaint contains no well-pleaded facts to explain how Sagent's warnings were inadequate in the first instance. While Plaintiff alleges the Subject MASI was "contaminated," contamination or even a charge of "adulteration" by the FDA, as discussed above,

---

[4] *See* Depo-Medrol Label (rev'd Dec. 2023) (hereafter, the "Label"), publicly accessible at: https://www.accessdata.fda.gov/drugsatfda_docs/label/2023/011757s123lbl.pdf (last accessed June 12, 2026). When a plaintiff claims a drug manufacturer failed to provide adequate warnings, a court may consider the underlying, FDA-approved label when ruling upon a Rule 12(b)(6) motion. *See*, *e.g.*, *True v. AbbVie, Inc.*, 806 F. Supp. 3d 1361, 1368 (N.D. Ga. 2025).

[5] Plaintiff alleges she "had been receiving [MASI] injections regularly for several years" before she developed an infection. (Compl. ¶ 8.)

is insufficient to adequately allege product defect, let alone demonstrate a product defect *proximately* caused injury. This is especially true where the injury suffered is explicitly warned of in the absence of any defect.

Because Plaintiff alleges no facts plausibly establishing either a breach of duty or a causal connection between any alleged failure to warn and her injuries, the Court cannot draw a reasonable inference of liability against Sagent. As such, Plaintiff's failure-to-warn claims—whether sounding in negligence, strict liability, or warranty—fail to satisfy the federal plausibility requirements of *Twombly* and *Iqbal*.

### E. Any Negligent Misrepresentation Claim Fails to Satisfy Rule 9(b).

Where Plaintiff claims "Defendants" were negligent by their alleged *concealment* of the risks associated with MASI products, *see* Compl. ¶ 40, she fails to satisfy the heightened pleading requirements of Rule 9(b), which apply to claims sounding in fraud. *Wamsley v. LifeNet Transplant Servs. Inc.*, No. 2:10-cv-990, 2011 WL 5520245, at *6 (S.D. W. Va. Nov. 10, 2011) ("Plaintiff's allegation that Defendants concealed a material fact sounds in fraud and, thus, triggers rigorous pleading requirements under Fed. R. Civ. P. 9(b)."). Again, Plaintiff makes no mention of Sagent by name in Count III. This alone warrants dismissal. "General allegations that do not specify the individual defendant responsible for the fraudulent statements or the lumping of all defendants together is insufficient for purposes of Rule 9(b)." *Christensen v. WMA Consumer Servs., Inc.*, No. 03-cv-1545, 2003 WL 22174240, at *3 (E.D. La. Sept. 5, 2003).

### F. The Remaining Duties Plaintiff Seeks to Base Count III on Are Preempted or Otherwise Do Not Exist Under West Virginia Law.

In Count III, Plaintiff alleges the Defendants were negligent in failing to "properly manufacture, inspect, or timely warn of and/or concealed" the risks associated with MASI products. (Compl. ¶ 40.) She alleges the Defendants breached their duties of care by, *inter alia*,

failing to adequately test each batch of MASI before releasing the product and failing to timely initiate a recall upon discovery of the defect. But there is no such duty to conduct pre-market testing, post-market observation, or otherwise warn consumers prior to initiating a recall under West Virginia law.

Even if it were assumed such duties exist, such claims are preempted by federal law. Applying the Fourth Circuit's analysis in *Drager*:

> [I]t is apparent from the nature of [Plaintiff's] claim that any alleged failure by [Sagent] to conduct adequate premarket testing or post-market observation of its drug is in actuality merely a particular act or omission in an overall negligent sale. Divorced from the context of an eventual sale to the consumer, [Sagent] could not owe any duty to that consumer to perform any testing or inspection on its product, and there could therefore be no cause of action for negligence. If we assume that under [West Virginia] law there is a general duty to protect consumers from injury based on the negligent marketing and sale of a product, it is clear that a generic drug manufacturer whose product is unreasonably dangerous as sold could not satisfy that duty without changing its warnings, changing its formulation, exiting the market, or accepting tort liability. Therefore, [Plaintiff's] negligence claims are preempted by impossibility.

*Drager*, 741 F.3d at 477.

Any state-law duty requiring a generic drug manufacturer to warn consumers prior to an approved recall—whether framed as a duty to warn of contamination risks, a duty to communicate with the public about manufacturing defects, or a duty to initiate or expedite a recall—would be subject to the same impossibility preemption analysis under *Mensing* and *Drager*. Such a duty would necessarily require Sagent to either change its labeling (to add warnings about contamination or manufacturing defects), communicate information inconsistent with its approved labeling (through Dear Doctor letters or other communications), or exit the market—all of which are prohibited by federal law or deemed impermissible means of avoiding preemption. *See id.*

**G. Plaintiff Has Not Pleaded Negligence *Per Se*.**

Plaintiff purports to state a claim for negligence *per se* at Count IV of her Complaint, relying on the FDCA and "the regulations promulgated thereunder." (Compl. ¶ 44.) The FDCA, however, "leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions." *Buckman Co. v. Pls.' Legal Committee*, 531 U.S. 341, 349 n.4 (2001). Accordingly, Plaintiff's backdoor attempt to enforce the FDCA through a negligence *per se* claim is preempted by federal law. *Mullins v. Ethicon, Inc.*, No. 2:12-cv-2952, 2017 WL 275452, at *2 (S.D. W. Va. Jan. 19, 2017).

Moreover, "the violation of a statute is *prima facie* negligence and not negligence *per se*." *Waugh v. Traxler*, 412 S.E.2d 756, 757 (W. Va. 1991) (citation omitted); *C.C. v. Harrison Cnty. Bd. of Educ.*, 859 S.E.2d 762, 772 (W. Va. 2021) (to state a claim for negligence *per se*, a plaintiff must allege facts sufficient to meet the elements of negligence). It is clear from the Complaint that Plaintiff's negligence *per se* claim does not attempt to set a minimum standard of conduct for negligence. Rather, Plaintiff invokes the FDCA as the very basis for her cause of action: "Defendants' violations of these standards constitute negligence per se, and such negligence was a direct and proximate cause of Plaintiff's injuries and damages." (Compl. ¶ 47.) Thus, as in *Buckman*, Plaintiff's claim exists "solely by virtue of the FDCA." 531 U.S. at 353. Count IV must be dismissed.

**H. Plaintiff's Warranty Claim Fails.**

In Count V, Plaintiff alleges Sagent breached express and implied warranties regarding the safety of its generic MASI by supplying it in an unsafe condition without sufficient warnings because it was "contaminated and subject to recall." (Compl. ¶ 51.) This fails to state a warranty claim.

An express warranty is created when the affirmation of fact, promise or description of the goods is part of the basis of the bargain made by the seller to the buyer about the goods being sold. W. VA. CODE § 46–2–313(1)(a)-(b). Plaintiff identifies no affirmation of fact, promise, description, or representation by Sagent that became part of any bargain. And "[e]vidence of an injury resulting from a defective product does not, by itself, give rise to an inference that the seller of the product made any contrary affirmations of fact or descriptions of the goods in question before placing them 'into the stream of interstate commerce.'" *Raab v. Smith & Nephew, Inc.*, 150 F. Supp. 3d 671, 701 (S.D. W. Va. 2015) (internal citations omitted).

Nor does she allege any facts showing the Subject MASI was unmerchantable. As discussed above, the mere fact that the Subject MASI was allegedly "contaminated" and "may" have been subject to recall is insufficient to plausibly allege it is not reasonably safe for its intended purpose, especially where the FDA's classification of the recalled lots communicates that use of affected product presents only a remote probability of serious harm. A product can be subject to recall and/or contaminated and still be "fit" for its expected use.

Worse, Plaintiff's warranty claim is merely a repackaged manufacturing-defect or warnings claim that is barred for reasons already discussed. As to warnings:

> Assuming that [Sagent's] representations are false or misleading because its [MASI] is unreasonably unsafe as marketed, it has no authority to add or remove information from its materials or to change the formulation of the product to make its representations complete or truthful. Therefore, [Sagent's] only remaining options are to leave the market or accept tort liability. As a result, [Plaintiff's] misrepresentation and fraudulent concealment claims are preempted by the FDCA.

*Drager*, 741 F.3d at 479.

There is nothing in the Complaint to give plausible rise to breach of an express or implied warranty between the parties, and Plaintiff's claim for breach of warranty must as a result be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Sagent Pharmaceuticals respectfully requests this Court dismiss Plaintiff's Complaint in its entirety.

Dated: June 12, 2026

Respectfully submitted,

*/s/ Clem C. Trischler*
Clem C. Trischler (W.V. Bar No. 5267)
PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
412-263-1816 Telephone
412-263-4246 Facsimile
cct@pietragallo.com

*Attorney for Defendant Sagent Pharmaceuticals*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2026, I electronically filed the foregoing Memorandum in Support of Sagent Pharmaceuticals' Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification to all parties of record.

Dated: June 12, 2026

*/s/ Clem C. Trischler*
Clem C. Trischler