**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

GARNET ANN DAVIS,

Plaintiff,

v. CIVIL ACTION NO. 2:26-cv-00316

SAGENT PHARMACEUTICALS, INC. and
MCKEESON MEDICAL-SURGICAL INC.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendant McKesson Medical-Surgical Inc.'s Motion to Dismiss Plaintiff's Complaint* (Document 9), *Defendant McKesson Medical-Surgical Inc.'s Memorandum in Support of Its Motion to Dismiss Plaintiff's Complaint* (Document 10), the *Plaintiff's Response in Opposition to Defendant McKesson Medical-Surgical, Inc.'s Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6)* (Document 19), and *Defendant McKesson Medical-Surgical Inc.'s Reply in Support of Its Motion to Dismiss Plaintiff's Complaint* (Document 22).

Additionally, the Court has reviewed *Defendant Sagent Pharmaceuticals, Inc.'s Motion to Dismiss Plaintiff's Complaint* (Document 14), *Defendant Sagent Pharmaceuticals, Inc.'s Memorandum in Support of Its Motion to Dismiss Plaintiff's Complaint* (Document 15), the *Plaintiff's Response in Opposition to Defendant Sagent Pharmaceuticals, Inc.'s Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6)* (Document 20), and *Defendant Sagent Pharmaceuticals' Reply in Support of Its Motion to Dismiss Plaintiff's Complaint* (Document 23),

as well as the *Complaint* (Document 1-1). For the reasons stated herein, the Court finds that the motions should be granted in part and denied in part.

## FACTUAL ALLEGATIONS

The Plaintiff, Garnet Ann Davis, initiated this action in the Circuit Court of Kanawha County, West Virginia, on or about March 27, 2026. She named as Defendants Sagent Pharmaceuticals, Inc. ("Sagent") and McKesson Medical-Surgical, Inc. ("McKesson"), who manufacture and distribute pharmaceutical products respectively.

The Plaintiff received corticosteroid injections approximately every six months for treatment of acquired right hallux rigidus, also known as severe arthritis of the first metatarsophalangeal joint of the right big toe, and had been receiving the injections for several years. On March 28, 2024, the Plaintiff received an injection of Methylprednisolone Acetate Injectable Suspension, USP ("MASI product"), 40 mg/mL, which was mixed with 1 mL of Lidocaine 1%, and administered into her first metatarsophalangeal joint of her right big toe at West Virginia Foot & Ankle, PLLC, in Charleston, West Virginia. The injection of the MASI product, manufactured by Sagent and distributed by McKesson, contained black particulate matter and was subsequently recalled due to contamination.

Following the injection, the "Plaintiff experienced acute and severe pain, redness, and swelling at the injection site – symptoms that were unusual and materially different from her prior injection experiences." (Compl. at ¶ 13.) She went to the emergency room of CAMC Memorial Hospital in Charleston, West Virginia, on April 1, 2024, and was admitted[1] after an arthrocentesis revealed that she had cloudy synovial fluid consistent with an infection. The Plaintiff was

[1] The Plaintiff was admitted from April 1 through April 8, 2024.

diagnosed with "cellulitis of the right foot and MSSA (Methicillin-sensitive Staphylococcus aureus) bacteremia." (*Id.* at ¶ 15.) She "underwent surgical debridement of the right foot on April 4, 2024, and was discharged on a four-week course of intravenous Kefzol (cefazolin) via PICC line." (*Id.*)

After the Plaintiff's condition did not resolve, she was readmitted to CAMC from April 23 through May 2, 2024, due to "worsening MSSA bacteremia secondary to right foot osteomyelitis." (*Id.* at ¶ 16.) She underwent a "bone biopsy, two incision and drainage procedures, and an osteotomy of the right great toe," and pathology revealed "acute and chronic osteomyelitis of the first proximal phalanx and MTP joint." (*Id.*) Although the Plaintiff underwent treatment for several months, the treatment did not resolve her osteomyelitis, and on June 24, 2024, she underwent an amputation of her right big toe. Following the amputation, the Plaintiff developed several permanent and debilitating conditions, "including Complex Regional Pain Syndrome (CRPS/Causalgia) of the right lower extremity, Phantom Limb Syndrome with pain, and Chronic Pain Syndrome." (*Id.* at ¶ 25.) On July 31, and September 15, 2025, due to the severity of her condition, the Plaintiff was required to undergo a trial and permanent implementation of a spinal cord stimulator at St. Francis One Day Surgery in Charleston, West Virginia. She continues to suffer from severe pain, recurrent falls related to her amputation, and limitations in activities in her daily life due to her permanent disability.[2] The Plaintiff's total medical expenses to date exceed $156,957.56 and are ongoing.

On June 25, 2024, the "Plaintiff received a letter from West Virginia Foot & Ankle, PPLC, informing her of an 'urgent drug recall' of specific lots of Methylprednisolone Acetate Injectable

[2] On January 20, 2026, the Plaintiff was administered an Owestry Disability Index, which classified her "with 54% 'Severe Disability.'" (Compl. at ¶ 27.)

Suspension, USP manufactured by Sagent and distributed by McKesson, advising that she 'may have been given one of the affected injections' during a prior visit." (*Id.* at ¶ 19.) The Plaintiff alleges that the Defendants were capable of identifying the unsafe products and failed to timely notify the Plaintiff and her healthcare provider.

She asserts the following claims: Count I: Strict Liability – Manufacturing Defect, Count II: Strict Liability – Failure to Warn, Count III: Negligence, Count IV: Negligence Per Se, and Count V: Breach of Express and Implied Warranties.

**STANDARD OF REVIEW**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further

factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

*A. Shotgun Pleading*

Before addressing the Defendants' arguments related to each of the Plaintiff's individual claims, the Court initially addresses their argument that the Plaintiff's Complaint is an impermissible shotgun pleading because it "relies upon indeterminant assertions against 'Defendants' without any specific facts regarding either one," and that the only time it references them is when it refers to Defendant Sagent as the manufacturer of the MASI product and Defendant McKesson as the distributor of the product.

The Plaintiff argues that the Complaint alleges she was injected with the MASI product that was contaminated with particulate matter and identifies Defendant Sagent as the manufacturer and Defendant McKesson as the distributor of that product.

A complaint will be considered a "shotgun pleading" if it "fails to articulate claims with sufficient clarity to allow the defendant[s] to frame a responsive pleading. . . or [is one in which] it is virtually impossible to know which allegations of fact are intended to support which claims for relief." *Knouse v. Primecare Medical of West Virginia*, 333 F.Supp.3d 584, 592 (S.D. W. Va. 2018). In other words, a shotgun pleading is one that contains "vague and conclusory allegations" that "make it quite difficult to ascertain what. . . plaintiff['s] claim(s) may be. . . or to ascertain what claims are asserted against which defendants, and why." *Tuton v. Virginia Dep't of Educ.*, No. 3:14cv446, 2014 WL 12539403, at *1-*2 (E.D. Va. Sept. 23, 2014) (explaining that "the quintessential shotgun [is one] that presents many different transactions, occurrences, and series of transactions or occurrences and that is presented in such a conclusory form that it is virtually

impossible to ascertain what claims are asserted against which defendants and on what legal basis the respective claims are founded").

The Court finds the Plaintiff's Complaint is not an impermissible shotgun pleading. The Complaint sets forth sufficient detail to identify both Defendant Sagent's and Defendant McKesson's involvement in the allegations that give rise to each of the Plaintiff's claims. Specifically, the Complaint contains allegations that the Plaintiff was harmed after receiving an injection of a MASI product that was contaminated with black particulate matter, and that the MASI product was manufactured by Defendant Sagent and distributed by Defendant McKesson. Although the Plaintiff's claims refer to "Defendants," it is clear from the Complaint that those claims are against both Defendant Sagent and Defendant McKesson, and as previously mentioned, the Complaint provides them with sufficient notice of their respective role under those claims. The Court denies the motions to dismiss the Complaint on grounds of shotgun pleading because the Complaint sets forth sufficient detail to permit the Defendants to ascertain the claims against them.

*B. Manufacturing Defect (Count I)*

Defendant Sagent argues that the Plaintiff has not plausibly alleged that the MASI product possessed a manufacturing defect. Specifically, it argues that the Plaintiff has alleged that she "may" have been injected with a MASI product subject to the recall or that was otherwise contaminated. It also argues that the recalled lots only had the *potential* to contain black particulate matter, and that even if the one administered to the Plaintiff did, she failed to "allege facts showing the possible presence of particulate matter rendered the Subject MASI not

reasonably safe for its intended use."[3] (Def. Sagent Mem. at 5.) It asserts that bare allegations of contamination do not establish that the product was defective and that it was not reasonably safe for injection. It asserts that Plaintiff failed to allege facts demonstrating the alleged particulate contamination proximately caused the Plaintiff's injuries given that "the risk of injection is present with any injectable drug regardless of any possible contamination, impurity, or adulteration." (*Id.* at 6.) Defendant McKesson argues that it is immune from liability under West Virginia's innocent seller statute, that the Plaintiff failed to plead any exceptions under the statute, and that none apply.[4]

The Plaintiff asserts that she alleged she received a MASI injection on March 28, 2024, that was manufactured by Defendant Sagent and distributed by Defendant McKesson. She asserts that the MASI product was recalled due to the presence of black particulate matter, "was defective in that it deviated from its intended specifications, contained contamination including particulate matter, and was otherwise adulterated or impure," that she "'immediately' experienced acute and severe pain, redness, and swelling at the injection site, 'symptoms that were unusual and materially different from her prior injection experiences,'" and that she received a letter from her healthcare provider stating that she may have been given a contaminated MASI product. (Pl.'s Resp. at 8.) She argues that West Virginia law allows a manufacturing defect to be proven through circumstantial evidence, and that "a severe joint infection, osteomyelitis, and amputation

[3] Defendant Sagent asserts the "FDA's designation of the recall as 'Class II' reflects that the probability of serious adverse health consequences is remote." (Def. Sagent Mem. at 5.)

[4] Defendant McKesson also argues that as it relates to the exception under § 55-7-31(b)(1), although the Plaintiff alleges that it had knowledge of the defect and relies on the letter from her healthcare provider, the letter was not included with the complaint and there are no plausible allegations in the complaint that suggest that it had knowledge prior to Defendant Sagent's recall, which "was initiated on April 25, 2024, nearly a month after Plaintiff's alleged injection." (Def. McKesson Reply at 5.) Defendant McKesson contends that the exceptions under § 55-7-31(b)(6) and § 55-7-31(b)(7) are inapplicable given "that there are no allegations of fact anywhere in the Complaint to support these exceptions." (*Id.* at 6.)

following injection of a recalled, contaminated pharmaceutical, with immediate onset and no prior response to the same drug, would not ordinarily occur in the absence of a product defect." (*Id.* at 8-9.) The Plaintiff asserts Defendant Sagent's reliance on *In re Digitek* is unavailing given that it was decided at the summary judgment stage rather than the pleading stage. The Plaintiff argues three exceptions under West Virginia's innocent seller statute apply, specifically those under § 55-7-31(b)(1), (b)(6), and (b)(7).[5]

Beginning with Defendant Sagent's argument regarding the adequacy of the Plaintiff's manufacturing defect claim, the Court finds that the claim has been adequately pled. A manufacturing defect occurs "when a product comes off the assembly line in a substandard condition." *Morningstar v. Black and Decker Mfg. Co.*, 253 S.E.2d 666, 583 (W. Va. 1979); *see also Tyree v. Boston Sci. Corp.*, No. 2:12-cv-08633, 2014 WL 5359008, at *3 (S.D. W. Va. Oct. 20, 2014). "To prevail on a manufacturing defect claim, the plaintiff must establish that (1) the product was defective; (2) due to a manufacturing defect; (3) present at the time the product left the manufacturer's control; (4) which proximately caused the plaintiff's injury." *Tyree*, No. 2:12-cv-08633, 2014 WL 5359008, at *3 (S.D. W. Va. Oct. 20, 2014) (citing *Morningstar*, 253 S.E.2d at 680). A defendant is strictly liable for a manufacturing defect if the defect renders the product "not reasonably safe for its intended use." Syl. Pt. 4, *Morningstar*, 253 S.E.2d 666 (W. Va. 1979).

[5] The Plaintiff argues the letter she received from her healthcare provider notifying her of the recall stated that it received information from Defendant McKesson, which raises questions regarding when and what McKesson knew about the defect. She also argues that the gap between the recall and the communication as well as the facts raised in the Complaint give rise to "a plausible inference that McKesson had, at a minimum, actual knowledge of the defect as of April 25, 2024, and that the timing of its communication to Dr. Frame is a subject of legitimate factual inquiry." (Pl.'s Resp. at 10.) As it relates to the exceptions under § 55-7-31(b)(6) and (b)(7), the Plaintiff asserts that there is a question regarding whether Defendant McKesson timely conveyed the recall information, which cannot be resolved at the pleading stage.

In her Complaint, the Plaintiff alleged she received an injection of a MASI product contaminated with black particulate matter on March 28, 2024, that was manufactured by Defendant Sagent and distributed by Defendant McKesson. She alleged that after receiving the injection, she experienced symptoms at the injection site, such as "severe and acute pain, redness, and swelling," that she had never experienced from previous injections, and that she later "developed severe MSSA bacteremia, septic arthritis, and osteomyelitis of the right foot, ultimately requiring an amputation of her right great toe and first ray." (Compl. at ¶¶ 13, 24.) The Plaintiff also alleged that on June 25, 2024, nearly three months after the injection, she received a letter from her healthcare provider stating the MASI product was subject to a recall and that "she 'may have been given one of the affected injections' during a prior visit." (*Id.* at ¶ 19.)

At this stage, these allegations are sufficient to assert a claim based on manufacturing defect. The Plaintiff clearly alleged she had been injected with a contaminated MASI product manufactured by Defendant Sagent and that after receiving the injection, she developed an infection that required an amputation of her right big toe. Although Defendant Sagent asserts that the Plaintiff has not alleged how the contamination rendered the product unsafe and that the risk of infection is present with any injection,[6] the allegations are still sufficient given that it is plausible the contamination in the MASI product caused the infection that ultimately resulted in the amputation.

Turning to Defendant McKesson, it asserts the Plaintiff's manufacturing defect claim is barred by West Virginia's innocent seller statute. Under that statute, "[n]o product liability action

[6] To the extent Defendant Sagent asserts that the Plaintiff cannot demonstrate that the contamination proximately caused her injuries given the risks typically associated with an injection, such an issue involves factual questions that cannot be resolved at the pleading stage.

shall be maintained against a seller, unless" at least one of thirteen exceptions applies. W. Va. Code § 55-7-31(b). The statute defines "product liability action" as:

> [A]ny civil action brought against a manufacturer or seller of a product, based in whole or in part on the doctrine of strict liability in tort, for or on account of personal injury, death or property damage caused by or resulting from:
>
> (A) The manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, marketing or sale of a product;
>
> (B) The failure to warn or protect against a danger or hazard in the use, misuse or unintended use of a product; or
>
> (C) The failure to provide proper instructions for the use of a product.

*Id.* at § 55-7-31(a)(4). The statute defines "seller" as "a wholesaler, distributor, retailer, or other individual or entity, other than a manufacturer, that is regularly engaged in the selling of a product whether the sale is for resale by the purchaser or is for use or consumption by the ultimate consumer." *Id.* at § 55-7-31(a)(5).

The Plaintiff asserts that out of the thirteen exceptions, three under § 55-7-31(b), specifically (b)(1), (b)(6), and (b)7) apply. The exception under § 55-7-31(b)(1) applies when "[t]he seller had actual knowledge of the defect in the product that was a proximate cause of the harm for which recovery is sought." *Id.* at § 55-7-31(b)(1). The Plaintiff alleges that Defendant McKesson knew that the MASI product it distributed was contaminated. Accepting this allegation as true, the Court finds it sufficient and plausible that the exception under § 55-7-31(b)(1) applies.[7] The Plaintiff's claim against Defendant McKesson is sufficiently pled at this

[7] Given that the Court finds it is plausible that the exception under § 55-7-31(b)(1) applies, the Court need not address whether the other exceptions are applicable.

stage.[8] Thus, the Defendants' motions to dismiss the manufacturing defect claim should be denied.

*C. Failure to Warn (Count II)*

The Defendants, relying on *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011), argue the Plaintiff's failure to warn claims are preempted. Defendant Sagent asserts that because the MASI product it manufactures is the generic version of Pfizer's Depo-Medrol brand-name drug, "federal regulations forbid Sagent from making any unilateral changes to [its] warnings." (Def. Sagent Mem. at 10.) It asserts that an imposition of a duty to warn the Plaintiff's healthcare provider "prior to the initiation of the April 25, 2024, recall would have required Sagent to provide additional warnings beyond those included within the labeling for its brand-name counterpart" and therefore would have required it to violate federal law. (*Id.* at 10.) Defendant McKesson argues *Mensing* is equally applicable to distributors, despite only applying to manufacturers, because as a distributor, it lacked the authority to unilaterally alter the warning label of the drug manufactured by Defendant Sagent since it "neither manufactures nor holds the New Drug Application (NDA) for the brand-name MASI product, Depo-Medrol." (Def. McKesson Mem. at 4.) The Defendants also argue the Plaintiff's failure to warn claims are barred by the learned intermediary doctrine.

The Plaintiff, acknowledging Defendant Sagent is a generic drug manufacturer, concedes that its failure to warn claims against this Defendant are preempted under *Mensing*. She, however, asserts the same is not true for Defendant McKesson because *Mensing* and *Drager* involved generic drug manufacturers and not a distributor like Defendant McKesson. She argues the

[8] The finding related to the exception under § 55-7-31(b)(1) applies to the remaining claims to the extent they have not been dismissed.

impossibility rationale that drove those cases does not apply to Defendant McKesson because "[n]othing in federal law prevented McKesson from immediately contacting Dr. Frame's office the moment it received Sagent's recall notice." (Pl.'s Resp. at 12.) She further argues that "[a] claim that McKesson failed to act reasonably in the recall notification chain is not a claim that requires McKesson to unilaterally change a drug label." (*Id.*)

Impossibility preemption applies to the extent that "compliance with both federal and state regulations is impossible." *N. Va. Hemp and Agric., LLC v. Virginia*, 125 F.4th 472, 493 (4th Cir. 2025). "The question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 620 (2011). "[W]hen a party cannot satisfy its state duties without the Federal Government's special permission or assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for preemption purposes." *Id.* at 623-24.

The Supreme Court in *Mensing* addressed the preemptive effect of the Federal Food, Drug, and Cosmetics Act, 21 U.S.C. § 301 *et seq.*, ("FDCA") on state tort claims to the extent they require generic drug manufacturers to include additional warnings with their products. In that case, the Court found because "[f]ederal law. . . demanded that generic drug labels be the same at all times as the corresponding brand-name drug labels," generic drug manufacturers, therefore, were prohibited from "independently chang[ing] their labels to satisfy their state-law duty" to include additional warnings. *Mensing*, 564 U.S. at 618. So, the Court concluded that it was impossible for generic drug manufacturers "to comply with both their state law duty to change the label and their federal-law duty to keep the label the same." (*Id.*)

The Court finds the Plaintiff's failure to warn claim is preempted. Under that claim, the Plaintiff alleges the Defendants had a duty to timely warn the "Plaintiff, her healthcare provider, and the public that the [MASI] product was defective, contaminated, and not sterile." (Compl. at ¶ 35.) However, because the MASI product manufactured by Defendant Sagent is a generic drug,[9] the label for that drug is required to be the same as the corresponding brand-name drug label, and therefore, Defendant Sagent could not unilaterally change its generic drug label without violating federal law. *Mensing*, 564 U.S. at 618; 21 U.S.C. § 355(j)(2)(A)(v); 21 C.F.R. §§ 314.94(a)(8)(iii), 314.150(b)(10). This is the case even if Defendant Sagent utilized some other method to issue the warning, such as communication or letter to the Plaintiff's healthcare provider. *See Mensing*, 564 U.S. at 615 (concluding "that federal law did not permit the Manufacturers to issue additional warnings through Dear Doctor letters"); 21 C.F.R. § 202.1(l)(2).

Moreover, although *Mensing* applied only to generic drug manufacturers, and the Supreme Court has yet to determine its applicability to distributors, courts have found that state law claims based on the labeling of a generic drug are preempted if the defendant "lacked the ability to alter the drug's label." *Hernandez v. Aurobindo Pharma USA, Inc.*, 582 F.Supp.3d 1192, 1210 (M.D. Fl. 2022) (collecting cases); *see also In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Prods. Liab. Litig.*, MDL No. 2:14-mn-2502-RMG, 2016 WL 7644792, at *2 (D. S.C. Nov. 28, 2016) (holding that "the claims against McKesson based on Lipitor's label are clearly preempted by federal law" given that "McKesson had no authority to unilaterally change Lipitor's label" under the scheme established by the FDCA). Given that Defendant McKesson lacked the authority, as a distributor, to unilaterally alter the label for the MASI product

[9] *See* FDA's Approval Package for ANDA 201835, (June 27, 2018), https://www.accessdata.fda.gov/drugsatfda_docs/nda/2018/201835Orig1s000.pdf.

manufactured by Defendant Sagent, the Plaintiff's failure to warn claim against Defendant McKesson is preempted. Therefore, the claim should be dismissed.[10]

*D. Negligence and Negligence Per Se (Counts III and IV)*

The Defendants argue the Plaintiff's claim of negligence is preempted to the extent it is based on a failure to warn.[11] They argue that West Virginia does not impose a duty to test a product. Relying on *Drager*, they assert that to the extent there is such a duty, the remainder of the Plaintiff's negligence claim is also preempted. Defendant McKesson also asserts that to the extent the Plaintiff's allegations concern conduct that occurred during the MASI product's manufacture, the allegations are inapplicable to it "as a pass-through distributor of the product." (Def. McKesson Mem. at 10.) It argues there is no allegation it knew or should have known of the contamination prior to Defendant Sagent's recall, and that the negligence claim is inadequately pled.[12] Regarding the Plaintiff's negligence per se claim, the Defendants argue the Plaintiff attempts to enforce the FDCA through this claim, and therefore, the claim is preempted by federal law. They also argue "the violation of a statute is *prima facie* negligence and not negligence *per se*." (Defs.' Mems. at 13, 14, quoting *Waugh v. Traxler*, 412 S.E.2d 756, 757 (W. Va. 1991).)

The Plaintiff argues the Complaint sufficiently alleges McKesson's role as a distributor under the negligence claim. She argues the negligence claim is not preempted. She concedes the FDCA does not create a freestanding private cause of action but contends that the FDCPA remains relevant for establishing the standard of care for her negligence claim.

[10] Given that the Court finds the Plaintiff's failure to warn claim is preempted, the Court need not address the applicability of the learned intermediary doctrine.
[11] They also argue that the learned intermediary rule applies to this claim.
[12] Defendant McKesson also argues the negligence claim does not mention it by name or any sufficient background to put it on notice of the allegations against it.

Beginning with the Plaintiff's negligence claim, West Virginia permits product liability actions to also be premised on negligence. Syl. Pt. 1, *McNair v. Johnson & Johnson*, 818 S.E.2d 852 (W. Va. 2018) ("Product liability actions may be premised on three independent theories—strict liability, negligence, and warranty."). To establish a negligence products liability claim, a plaintiff must demonstrate the following elements: "(1) the manufacturer owed the consumer a duty to design/manufacture/warn regarding the product, (2) the product was defective thereby breaching that duty, (3) the breach of the duty proximately caused the plaintiff's injuries, and (4) the plaintiff was injured." Philip Combs, Andrew Cooke, *Modern Products Liability Law in West Virginia*, 113 W. Va. L. Rev. 417, 425 (2011); see also *Tyree*, No. 2:12-cv-08633, 2014 WL 5359008, at *4 (S.D. W. Va. Oct. 20, 2014); *Williams v. Bob Barker Co., Inc.*, No. 2:21-cv-00436, 2023 WL 34545, at *3 (S.D. W. Va. Jan. 4, 2023). A manufacturer owes a "duty to take reasonable care in the manufacture of a product," which may be satisfied through adequate quality control. *Williams*, No. 2:21-cv-00436, 2023 WL 34545, at *4 (S.D. W. Va. Jan. 4, 2023). Moreover, a distributor owes a duty to take reasonable care in the distribution of its products. *See Strahin v. Cleavenger*, 603 S.E.2d 197, 205 (W. Va. 2004) (explaining that "[w]hether a person acts negligently is always determined by assessing whether or not the alleged negligent actor exercised reasonable care under the facts and circumstances of the case, with reasonable care being that level of care a person of ordinary prudence would take in like circumstances"); *see also* Restatement (Third) of Torts: Products Liability § 6(e) (1998) ("A retail seller or other distributor of a prescription drug or medical device is subject to liability for harm caused by the drug or device if. . . at or before the time of sale or other distribution of the drug or medical device the retail seller or other distributor fails to exercise reasonable care and such failure causes harm to persons").

As a preliminary matter, given this Court's prior finding that the Plaintiff's failure to warn claim is preempted, to the extent the Plaintiff's negligence claim is based on a failure to warn, the Court finds those aspects of the negligence claim are also preempted[13] and should be dismissed.[14]

As it relates to the remainder of the Plaintiff's negligence claim, she alleges that the Defendants breached their duties by manufacturing and distributing MASI product "lots that were contaminated, adulterated, or otherwise defective and unsafe for human injection," by "[f]ailing to maintain adequate quality control, quality assurance, and testing processes sufficient to detect contamination before releasing the products to market," and by "[f]ailing to adequately test each lot of the product before distribution to ensure sterility and freedom from contamination." (Compl. at ¶ 41.) She alleges the breach of these duties caused her injuries. These allegations, in addition to those that have been previously discussed under the manufacturing defect claim, are sufficient to plead negligence related to breaches by Defendant Sagent and Defendant McKesson of their respective duties to exercise reasonable care in the manufacture and distribution of the MASI product which resulted in an infection and the amputation of the Plaintiff's right big toe. The Plaintiff has adequately pled her negligence claim.

The Defendants, relying on *Drager*, argue that even if they did owe a duty, the Plaintiff's negligence claim is preempted. However, the Court finds that *Drager* is distinguishable under these circumstances. In that case, the Fourth Circuit concluded that a plaintiff's negligence claim based on failure by a generic drug manufacturer to conduct pre-market tests and post-market

[13] Given that the aspects of the Plaintiff's negligence claim based on a failure to warn are preempted, the Court need not address whether learned intermediary rule applies. The rule is inapplicable to the remainder of the Plaintiff's negligence claim which is not based on a failure to warn.

[14] This finding also applies to the Plaintiff's negligent misrepresentation claim given that it is based on the alleged concealment of the risks associated with the contaminated MASI product, which is interconnected with the failure to warn claim. *See Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 479 (4th Cir. 2014). Thus, the Court need not address the parties' Rule 9(b) arguments.

observations of its drug was preempted, explaining that "it is clear that a generic drug manufacturer whose product is unreasonably dangerous as sold could not satisfy that duty without changing its warnings, changing its formulation, exiting the market, or accepting tort liability." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 479 (4th Cir. 2014). This reasoning, nonetheless, is based on the fact that the plaintiff's challenge in that case was prefaced on an alleged design defect. *See Drager*, 741 F.3d at 477. Unlike that case, the Plaintiff's challenge here is not based on a design defect, but rather a manufacturing defect. Because the Plaintiff's challenge is based on an alleged manufacturing defect and therefore directed towards specific product lots rather than the product's design, the Defendants would not have been required to take the same drastic steps outlined in *Drager* to satisfy their duty to exercise reasonable care in manufacturing and distributing the MASI product. In other words, if the Defendants exercised reasonable care in the manufacture and distribution of the MASI product and discovered the contamination, they could have removed the contaminated lots to avoid liability without having to provide a warning, exit the market completely, or change the MASI product's original formulation. Thus, the Plaintiff's negligence claim is not preempted by impossibility.

Defendant McKesson argues there is no factual basis that it had any knowledge of the alleged defect prior to Defendant Sagent's recall and that it did not have a duty to test the MASI product. Even if Defendant Mckesson did not have a duty to test the MASI product, as previously determined, given the allegations, it is plausible that Defendant McKesson may have become aware of the contamination prior to the distribution of the MASI product. If that were the case, Defendant McKesson's distribution of the MASI product despite such knowledge would constitute a breach of its duty to exercise reasonable care in its distribution of the product. Therefore, the

Court finds it would be premature to dismiss the negligence claim against Defendant McKesson. Because the Plaintiff has adequately pled a negligence claim against the Defendants, the Court finds that the motions to dismiss should be denied as to that claim.

Turning to the Plaintiff's negligence *per se* claim, "West Virginia law does not provide a cause of action for negligence *per se*." *L.C. v. Cabell Cnty. Bd. of Educ.*, No. 3:25-0587, 2026 WL 1999244, at *4 (S.D. W. Va. July 10, 2026) (citing *Mills v. Cabell Cnty. Bd. of Educ.*, No. 3:22-0592, 2023 WL 4980553, at *3 (S.D. W. Va. Aug. 3, 2023)). Moreover, the Plaintiff acknowledges that a statutory violation cannot establish an independent cause of action, but rather, is *prima facie* evidence of negligence. (Pl.'s Resp. at 16); *see also Waugh v. Traxler*, 412 S.E.2d 756, 758-59 (W. Va. 1991). Thus, the Court finds the Plaintiff's negligence *per se* claim should be dismissed.[15]

*E. Express and Implied Warranties (Count V)*

The Defendants argue the Plaintiff has failed to allege an express warranty claim because she has not identified any affirmation, promise, description or representation by them as it relates to the MASI product. Defendant Sagent further argues with respect to the implied warranty of merchantability, there are no allegations demonstrating the MASI product was unmerchantable, and the fact that the MASI product was contaminated is insufficient given "the FDA's classification of the recalled lots communicates that use of affected product presents only a remote probability of serious harm." (Def. Sagent Mem. at 15.) Defendant McKesson argues that there is no allegation it knew or should have known prior to the Plaintiff's injection that the MASI product was defective. The Defendants assert the warranty claim is also preempted under *Drager*.

[15] The Court notes that this does not preclude the Plaintiff from utilizing a violation of the FDCA as prima facie evidence for its negligence claim.

The Plaintiff argues the Complaint alleges the "Defendants expressly and impliedly warranted that the Methylprednisolone Acetate Injectable Suspension, USP was sterile, safe, and reasonably fit and suitable for its intended purpose." (Pl.'s Resps. at 16, 17, quoting Compl. at ¶ 49.) She asserts that whether the representations constitute a basis of the bargain, whether delivery breached the implied warranty of merchantability, or the facts surrounding the commercial relationship through which the product was supplied are all factual matters subject to discovery. She further asserts that her warranty claim is not preempted under *Drager* because her claim did not require the Defendants to change the MASI product's label or formulation, but rather required them to deliver an uncontaminated product.

A claim for breach of an express warranty arises under West Virginia Code § 46-2-313, which provides "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that goods shall conform to the affirmation or promise." W. Va. Code § 46-2-313(1)(a). "To succeed on a breach of express warranty claim, 'a plaintiff must show the existence of an express warranty, breach of the express warranty, and damages proximately caused by the breach." *Tyree*, No. 2:12-cv-08633, 2014 WL 5359008, at *5 (S.D. W. Va. Oct. 20, 2014) (quoting *Michael v. Wyeth*, LLC, No. 2:04-0435, 2011 WL 2150112, at *7 (S.D. W. Va. May 25, 2011)). A claim for a breach of an implied warranty of merchantability arises under West Virginia Code § 46-2-314, which provides that "a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."[16] W. Va. Code § 46-2-314(1). "[F]or goods to be merchantable, they must be 'fit for the ordinary purpose for which such goods are

[16] West Virginia also recognizes the implied warranty for a particular purpose under West Virginia Code § 46-2-315. However, there is no indication that the Plaintiff is asserting a claim for that implied warranty.

used.'" *Bennett v. Boston Sci. Corp.*, No. 2:13-cv-06641, 2015 WL 2088733, at *6 (S.D. W. Va. May 5, 2015) (quoting W. Va. Code § 46-2-314(2)(c)).

The Plaintiff has alleged the Defendants expressly and impliedly warranted that the MASI product would be "sterile, safe, and reasonably fit and suitable for its intended purpose," (Compl. at ¶ 49.), and that they breached those warranties by supplying a contaminated MASI product that resulted in her injuries. Accepting those allegations as true, the Court finds they are sufficient to establish a breach of express and implied warranties claim.[17] As to the Defendants' argument that the Plaintiff has failed to identify an affirmation, promise, description, or representation by them, the Plaintiff need not supply evidence of it at this stage of the proceedings. Moreover, to the extent they assert the Plaintiff has failed to allege facts showing that the MASI product was unmerchantable, given that the Plaintiff has sufficiently pled a strict liability manufacturing defect claim based on an alleged contaminated MASI product, she has also sufficiently pled a claim for a breach of the implied warranty of merchantability. *See Raab v. Smith & Nephew, Inc.*, 150 F.Supp.3d 671, 700 (S.D. W. Va. 2015) (explaining that "claims for strict liability and breach of the implied warranty of merchantability are essentially coextensive in products liability actions"). Accordingly, the Defendants' motions related to the breach of express and implied warranties claim should be denied.[18]

---

[17] To the extent Defendant McKesson asserts that there is no allegation it knew of the defect prior to the Plaintiff's injection, the Plaintiff has alleged Defendant McKesson knew or should have known that the MASI product was contaminated when it distributed the product.

[18] The Defendants, relying on *Drager*, argue the Plaintiff's warranty claim is preempted. However, as previously discussed, *Drager* is distinguishable given that, like her negligence claim, her warranty claim would not have required the Defendants to change any warnings of the MASI product, change its formulation, exit the market completely, or accept liability, but rather, would have simply required them to remove and not sell or distribute the contaminated lots.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant McKesson Medical-Surgical Inc.'s Motion to Dismiss Plaintiff's Complaint* (Document 9) and *Defendant Sagent Pharmaceuticals, Inc.'s Motion to Dismiss Plaintiff's Complaint* (Document 14) be **GRANTED** as to the Plaintiff's claims based on a failure to warn but **DENIED** as to the remaining claims.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: September 18, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA